Dominick H. DeCAMPLI, Plaintiff,

v.

John P. GREELEY, Truck Drivers and Helpers Local Union No. 676, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants.

Civ. A. No. 354-65.

United States District Court
D. New Jersey.
Nov. 26, 1968.

Martin A. Herman, Woodbury, N. J., for plaintiff.

Mary Ellen Talbott, Camden, N. J., and Seidman and Rome, Marshall J. Seidman, Philadelphia, Pa., of counsel, for defendants.

## OPINION

COHEN, District Judge:

A union business agent, summarily dismissed from office by the president of his union, sues for back wages and reinstatement. Initially required is a determination of whether jurisdiction under Sections 102[1] and 609[2] of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 412 and 529, is properly posited and whether a cause of action is stated thereunder. The dispute has been submitted upon stipulation, pleadings, depositions and briefs.

Plaintiff, Dominick H. DeCampli, alleges that on August 7, 1964, he was summarily discharged as business agent of the defendant-union, Truck Drivers and Helpers Local No. 676 (Union), by its President, defendant John P. Greeley (Greeley), in violation of those rights guaranteed to him by the "Bill of Rights"[3] and "Free Speech Rights"[4]

---

[1]. Section 102 (29 U.S.C. § 412)

"Civil action for infringement of rights; jurisdiction.—Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. * * *" Pub.L. 86–257, Title I, § 102, Sept. 14, 1959, 73 Stat. 523.

[2]. Section 609 (29 U.S.C. § 529)

"Prohibition on certain discipline by labor organization.—It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter. The provisions of section 412 of this title shall be applicable in the enforcement of this section." Pub.L. 86–257, Title VI, § 609, Sept. 14, 1959, 73 Stat. 541.

[3]. Section 101(a) (1) (29 U.S.C. § 411(a) (1)

"Equal rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

The legislative history of the "Bill of Rights" part of the LMRDA appears in 2 Legislative History of the Labor-Management Reporting and Disclosure Act of 1959 at 1102–1119, 1220–1239. U.S.Code Cong. and Admin.News 1959, p. 2318. See 77 Harv.L.Rev. 770 (1964) and 73 Yale L.J. 426 (1964).

[4]. Section 101(a) (2) (29 U.S.C. § 411(a) (2))

"Freedom of speech and assembly.— Every member of any labor organization shall have the right to meet and assem-

sections of the Act. Specifically, he maintains that his discharge, as an *officer* of the Union resulted from his outspoken remarks at a union meeting on July 27, 1964, opposing Greeley's request for the support with union funds of two business agents of the union, Greeley's appointees, who were under Federal indictment charging them with illegal union activities, and for the further reason that thereafter Greeley expressed his belief that the plaintiff was secretly meeting with other members in advocating a candidate for president in opposition to Greeley. Plaintiff contends that, despite the protection of the Act prohibiting reprisal for expressing such opinions on business matters properly before the union meeting, he was dismissed; further, he was denied due process in that he was not served with written specific charges, nor given a reasonable time to prepare his defense, nor was he afforded a full and fair hearing, all, he submits, in violation of Title I, Section 101(a) (5) of the Act.[5] Since the filing of the complaint, it was stipulated by all parties that:

"DiCampli (sic) was removed from the position of appointed Business Agent by the appointing authority, Greeley, President of Local No. 676, because he believed that DiCampli (sic) was engaging in activities, together with other appointed Business Agents, in secretly meeting in order to select and elect a candidate of their choice to oppose and defeat the incumbent President, Greeley, at the elections of officers of Local No. 676 to be held in November of 1965, and to establish and present union policy positions contra to those of Greeley.

"DiCampli (sic) received a salary as appointed Business Agent of $240.00 per week. Upon his termination by Local No. 676, DiCampli (sic) was afforded the opportunity to return to his former job as a truck driver with his former employer at a weekly wage of $120.00 per week. It is agreed that should the Court find in favor of the Plaintiff, that his damages will be in the sum of $120.00 per week for the period from August 7, 1964, the date of his termination, to December 31, 1965, the date of the expiration of the terms of all elected officers of Local No. 676."

We note that the above stipulation recites Greeley's *belief* of DeCampli's alleged disloyalty. This does not establish as a fact that his belief was correct. It merely assigns his reason for the plaintiff's dismissal.

Among the undisputed facts are these: Plaintiff DeCampli was appointed as business agent in January 1961 by the Union's President, Greeley, pursuant to Article IX, Section 7, of the Constitution of the Local Union, which provided at that time, as well as now, that:

"[The President] shall appoint all assistants necessary to carry on the work of the Local Union, who may be known as Business Agents, and set their rates of pay and expense allow-

ble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would in-

terfere with its performance of its legal or contractual obligation."

5. Section 101(a)(5) (29 U.S.C. § 411(a) (5))

"Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined * * * by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

ance, subject to confirmation by the Executive Board."

Thereafter, Plaintiff (as well as Thomas B. Kelly, Jr., in a companion case, Civil No. 1205–65) was discharged by Greeley upon the authority of Article IX, Section 8 of the Constitution of the Local Union, which provides:

"[The President] shall have the power to remove such assistants from employment and there shall be no appeal from such dismissal, even though such assistants may also hold an office in the Local Union."

Upon his dismissal, plaintiff appealed to President Backhus of the Teamsters Joint Council No. 53 and to President Hoffa of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America A. F. of L., both of whom denied any power or authority to review the action of Greeley.[6]

Thus, the issue presented is whether the "Bill of Rights" provisions and the "Free Speech" section of the LMRDA, supra, prohibit a labor union, or its chief executive officer, from discharging an officer, or employee of the Union for allegedly exercising membership rights and, if so, does the Act provide for a federal cause of action.

■ The answer is in the affirmative. The plaintiff is protected by the Act, and reprisal by dismissal for exercising such rights is prohibited, for which he may maintain an action here.

■ As to the jurisdictional issue, it must be observed that the assertion of a substantial claim under a federal statute, as here, gives a United States Court jurisdiction of that claim, even though it may determine ultimately that the claim fails, either because no cause of action on which relief could be granted was alleged, or for want of proof. Hughes v. Local 11, Int'l Ass'n of Bridge Workers, 287 F.2d 810, 814 (3 Cir. 1961), cert. den., 368 U.S. 829, 82 S.Ct. 51, 7 L.Ed.2d 32 (1961).

Turning to the second issue, wherein a dismissal of the complaint is sought on the basis that it fails to state a cause of action within the purview of the LMRDA, defendants rely upon a case in this Circuit, Sheridan v. United Brhd. of Carpenters, 306 F.2d 152 (3 Cir. 1962). They contend that the Act protects the rights only of a *member;* that upon his dismissal as a business agent, the plaintiff's membership in the Local Union remained unaffected; that at no time was he "fined, suspended, expelled or otherwise disciplined" as a *member* following his discharge as an officer or employee thereof; and that the Act does not protect plaintiff's status as an officer or employee of the Union. Plaintiff counters and places his reliance upon a case out of the Ninth Circuit, Grand Lodge of Int'l Ass'n of Machinists v. King, 335 F.2d 340 (9 Cir. 1964), cert. den. 379 U. S. 920, 85 S.Ct. 274, 13 L.Ed. 2d 334 (1964), and urges us to accept the construction of the Act contained therein rather than that in *Sheridan,* supra. Other opinions,[7] appellate and at trial level, involving the problem pre-

---

6. The following is the pertinent portion of a letter from James R. Hoffa, President of the International Brotherhood of Teamsters, etc.:

"In reply to your letter of August 6, 1964, this will advise that Article XVII, Section 8 of the International Constitution provides as follows:

'Appointed Business Agents or appointed Assistant Business Agents may be removed at will by the appointing authority.'

In light of the foregoing, the International Union has no jurisdiction or responsibility with respect to your removal as Business Agents of Local 676 and there is no appropriate action to be taken by this office." (Tr. 58–59).

7. See: Ryan v. Intl. Broth'd of Electrical Workers, 361 F.2d 942 (7 Cir. 1966); George v. Bricklayers, Masons & Plasterers Int'l Union of America, 255 F. Supp. 239 (E.D.Wis.1966); Navarro v. Gannon, 385 F.2d 512 (2 Cir. 1967); Stettner v. Int'l Printing Pressmen & Assistants' Union, 278 F.Supp. 675 (E. D.Tenn.1967); Sawyers v. Grand Lodge, 1 A.M., 279 F.Supp. 747 (E.D.Mo., E.D. 1967); and Nix v. Fulton Lodge No. 2, Int'l Ass'n of Machinists & Aerospace Workers & Davis L. Millar, et al., 262

sented are relatively scant since those two decisions.

The plaintiff maintains that cases in other circuits subsequent to *Sheridan*, coupled with the Supreme Court's refusal to grant certiorari in *Grand Lodge*, should upon reanalysis point in a direction beyond *Sheridan*. In light of the seeming conflict between the decisions in these two important cases, a careful study of each is essential.

In *Sheridan*, an altercation arose between the plaintiff—business agent and a union member over alleged work-assignment-favoritism erupting into a physical assault upon the business agent and his subsequent filing of assault and battery charges against the union member resulting in the member's conviction. The matters giving rise to the altercation were made the bases of charges against the business agent for violation of sections 43L and 56A of their Union's Constitution and By-Laws.[8] The Union Trial Committee found the business agent guilty of violating both sections and its report and recommendations were approved by the union membership. Thereafter, the union voted to remove the business agent from his office; whereupon, he instituted suit for reinstatement and damages, claiming that when he prosecuted the union member for striking him, he was exercising a right guaranteed to him by Section 101 (a) (4)[9] of the Act. He maintained that he was possessed of a right to sue and that the Union's disciplinary action in dismissing him for doing so violated Section 609 of the Act (29 U.S.C. § 529), wherein it is unlawful for any labor organization to "discipline" any member for exercising a right to which he is entitled.[10] The United States District Court for the District of Delaware entered judgment in favor of the plaintiff. Upon appeal, the Union contended, as it did in the district court, that the Court lacked jurisdiction for two reasons: (1) the inapplicability of the Act to an officer or employee of the Union and (2) the failure of the plaintiff to exhaust intra-union remedies prior to his institution of suit. Judge Kalodner's opinion related to the first point; Judge Hastie's to the second. Judge Kalodner held that neither the right to sue provision (section 101(a) (4)), which is part of Title I, the so-called "Bill of Rights," nor the enforcement provisions of section 609 extended protection to a union member's status as an officer or employee. As he stated at page 157:

"Thus, neither under the 'Bill of Rights' provisions of Title I, nor under Section 609, proscribing disciplinary sanctions against union members, is plaintiff's status as business agent protected by the Act. It is the union-member relationship, not the union-officer or union-employee relationship, that is protected."

It should be noted in *Sheridan* that the union trial committee found the business agent guilty of violating two sections of its constitution and bylaws: (1) the impairment of employment rights of a member and (2) failure to exhaust

---

F.Supp. 1000 (N.D.Ga.1967); Salzhandler v. Caputo, 316 F.2d 445 (2 Cir. 1963).

8. "43L: No member shall injure another member by undermining such member in prices or wages, nor commit any wilful act by which the reputation of the member is injured or employment jeopardized."

"56A: * * * A member must exhaust all resources allowed by the Constitution and Laws of the United Brotherhood before taking a case to the civil courts." (306 F.2d 152 at pp. 153, 154).

9. Section 101(a) (4) (29 U.S.C. § 411(a) (4))

"Protection of the right to sue.—No labor organization shall limit the right of any member thereof to institute an action in any court, * * *. *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: * * *." Pub.L. 86–257, Title I, § 101, Sept. 14, 1959, 73 Stat. 522.

10. See Note 2, ante.

intra-union procedures before instituting a criminal action against a member (43L and 56A).[11] More significantly, the decision reversing the district court judgment in favor of the plaintiff-business agent, was rendered by a split panel of the Court. Judge Kalodner, speaking for the Court, ruled that such removal was not a form of "discipline" within the proscription of LMRDA; and further, that the Act does not protect the officer or employee status per se of a union member. Judge Hastie (now Chief Judge) concurred with the reversal, but reached his conclusion solely upon the plaintiff's failure to follow and exhaust intra-union remedies within the period of time prescribed by the Act. He confined his consideration of the plaintiff's assertion under section 102, of a right to sue, as being limited by section 101(a) (4) thereof which authorizes "a labor organization to require a member to utilize reasonable procedures, requiring not more than four months, for redress within the organization before taking a grievance to court" [12] and that not having done so, the action should have been dismissed by the trial court as premature. (306 F.2d at p. 159.) Dissenting on both issues determined by the concurring opinions, Judge McLaughlin disagreed that the suit was premature stating that the plaintiff had pursued intra-union remedies until they appeared futile because of his imminent replacement by another officer-employee and, further, because on the union trial committee record, "Sheridan was discharged as Business Agent not for wrongful conduct in that capacity but because he, as a union member, had taken criminal action against his brother member without first going through union procedure." (306 F.2d at p. 165.) He concluded that suit under the Act was appropriate where the union member was disciplined by dismissal from a union office for

alleged misconduct as a member. These, briefly stated, were the separate opinions of the three judges on the panel, two of whom concurred in the reversal of the district court but for different reasons and the third dissented from both. Neither re-argument, nor appeal followed in *Sheridan.*

Some two years later, in 1964, *Grand Lodge* was decided. There, a group of plaintiffs alleged that they were discharged as officers (representatives), in violation of the "Bill of Rights" and "Free Speech" sections of the Act,[13] because they actively supported an unsuccessful candidate for office by meeting with other members and by expressing views favorable to that candidate. The defendants, the lodge and its officers, conceded that the right to engage in such intra-union political activity is guaranteed to union members under the aforesaid sections of the Act, but argued that these and other rights protected by Title I of the Act do not extend to officer-members of the union. The district court concluded that the plaintiffs stated a cause of action for improper summary discharge in violation of the "due process" section of the Act, 29 U.S.C. § 411(a) (5),[14] and denied the defendants' motion to dismiss. On interlocutory appeal, the Court held that an officer-member was *not* protected by the section of the Act relied upon by the district court, stating at pages 342–343 of 335 F.2d:

"In deference to the 'patent legislative intent' (citations) it has been held with virtual unanimity (citations) that section 101(a) (5) does not apply to removal or suspension from union office. (citations) We think these decisions are correct. Furthermore, we think it makes no difference what the reason for the summary removal may have been. Congress's primary concern was that section 101(a) (5) should not bar summary removal of

---

11. See Note 8, ante.

12. See Note 9, ante.

13. 29 U.S.C. § 411(a) (1) and (2), see notes 3 and 4, ante.

14. See Note 5, ante.

union officials suspected of malfeasance, but the means Congress chose to accomplish its purpose was to wholly exclude suspension or removal from union office from the category of union action to which section 101(a)(5) applied."

However, going beyond the so-called "due process" section, the Court of Appeals reached what it deemed to be the more pertinent issue, stating at page 343:

"However, sections 101(a)(1) and (2) apply in terms to 'every member', and nothing in the statutory language excludes members who are officers. Nor is there any intimation in the legislative history that Congress intended these guarantees of equal political rights and freedom of speech and assembly to be inapplicable to officer-members." (Emphasis supplied and citations omitted.)

Thus, it should be observed that in *Grand Lodge*, the plaintiff-officers asserted intra-union *political activity* rights guaranteed to them by the LMRDA and for which "discipline" by dismissal was held to be prohibited by the Act. While in *Sheridan*, by sharp contrast, the serious offense of *malfeasance* in office was charged against the business agent in that he allegedly employed favoritism in work assignments, which charge led to an altercation, assault and battery, crimimal proceedings, a trial committee hearing, a report together with its recommendation to the union membership of the committee's findings, all of which led to the plaintiff's ultimate dismissal from office. The "political activities" in the instant case approximate those of *Grand Lodge*, a factual setting most dissimilar from that in *Sheridan*. Another marked distinction between *Sheridan* and our case is that here peremptory dismissal was ordered solely by the president without the slightest semblance of "due process," where in *Sheridan* there was substantial compliance with the "due process" section of the Act, in that charges were lodged, a hearing held by a trial committee, findings made with a report and recommendation to the full union membership which rendered final decision.

 It would seem, in protecting the exercise of democratic rights of free speech and assembly at union meetings involving matters bearing on the affairs of the full membership, that union officers and important officials, such as Business Agents, have a greater obligation to speak up than do the ordinary members, because of the responsibility and prestige of their positions. A Business Agent is just such a union official to whom the membership looks for guidance, be he elected or appointed and be he an officer or an employee. It is widely known that in many unions the Business Agent is the most important administrative representative. To reduce him to silence through fear of disciplinary reprisal is tantamount to saying that the member who succeeds in becoming an official of the union forfeits membership rights guaranteed to him by the LMRDA. Certainly, Congress never contemplated the imposition of such a "Hobson's Choice." A contrary construction would destroy a member's incentive to seek union office, or other responsible position. It seems more reasonable to conclude that officers and employees possess the same rights as those guaranteed to other members under the Act.[15] Furthermore, these important rights cannot be abrogated by any provision of a union constitution or bylaws wherein absolute authority, as here, is vested in the president to summarily dismiss an officer or employee for exercising his rights under Title I of the LMRDA, 29 U.S.C. § 411(b).[16] Such a provision would be repugnant to the aforesaid section of the Act. How-

15. Cf. Grand Lodge, 335 F.2d 340. Note 12 therein at p. 343.

16. 29 U.S.C. § 411(b)—"Any provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect." Pub.L. 86-257, Title I, § 101, Sept. 14, 1959, 73 Stat. 522.

ever, as indicated in *Grand Lodge,* summary dismissal is warranted for *malfeasance* in office as a peremptory remedy to prevent a continuation of wrongdoing.

The conclusion reached here was not without considerable difficulty. Were we confronted merely with conflicting decisions between Circuits, our course would be clear—adherence to *Sheridan* would interdict independent judgment now, and we might be indifferent to the persuasiveness of *Grand Lodge.* Crucial to our choice, however, is the Supreme Court's denial of *certiorari* in *Grand Lodge,* thereby giving implicit approval to that holding, wherein construction of the Act's coverage has taken a step beyond *Sheridan.* Chief Judge Lumbard, speaking for the Second Circuit Court of Appeals, cites with approval the view expressed in *Grand Lodge,* that an officer may bring an action in a federal court to protect his secured rights as an individual member. See: Salzhandler v. Caputo, 316 F.2d 445 (2 Cir. 1963) and Navarro v. Gannon, 385 F.2d 512 (2 Cir. 1967). In *Salzhandler,* the financial secretary was discharged after union trial for alleged libel and slander. His damage action under the LMRDA was sustained. In *Navarro,* the president of a union local sued the parent union officers under the Act seeking to enjoin their interference at the local's meeting on the grounds that such interference violated the free speech and assembly rights of the local's members and officers. The Appeals Court upheld the district court's issuance of a preliminary injunction on the ground that the parent's contemplated assumption of control over meetings of the local was violative of the LMRDA. In our case, we perceive substantial factual distinctions between it and *Sheridan,* as well as the involvement of different areas of rights under the Act (e. g. Section 101(a) (5) was not even mentioned in

*Sheridan),* all of which necessitate the employment of legal principles dependent upon the specific Title I *rights* sought to be vindicated, rather than upon the *status* of the individual asserting the right, be he officer, employee or member. The statutory distinction between officers and members of a union organization seems to be, for the most part, confined to the summary discharge of officers for alleged *malfeasance* (section 101 (a) (5)). However, by contrast, when rights are asserted under Title I's "Bill of Rights," no member "may be fined, suspended, expelled, or otherwise disciplined" without observance of the aforementioned "due process" section. So that, in the instant case, the statutory remedies providing for the protection of the rights conferred by the Act have not been withheld from any particular person or persons.[17]

Accordingly, we are constrained to follow the view which gives greater breadth to the coverage of the Act. We believe that, in the accomplishment of the democratic purposes expressly sought to be attained and safeguarded by the Act, it was the design of Congress to extend Title I rights to all union personnel, be they officers, employees or "rank and file" members. Therefore, it is the conclusion of this Court that the plaintiff has stated, and upon the stipulation and record submitted has proved, his cause of action under the LMRDA and consequently he is entitled to the relief demanded.

Judgment shall be entered in his favor in the appropriate amount of damages as agreed upon in the stipulation. Reinstatement has been rendered moot as the unexpired term of the plaintiff's office terminated with the expiration of the then Executive Board, on December 31, 1965.

Judgment will likewise be entered in favor of the plaintiff Thomas B. Kelly,

17. Cf: *Saving provision of § 103 (29 U. S.C. § 413)—*
"Nothing *contained in this subchapter* shall limit the rights and remedies of any member of a labor organization under any State or Federal law or before any court or other tribunal, or under the constitution and bylaws of any labor organization." Pub.L. 86–257, Title I, § 103, Sept. 14, 1959, 73 Stat. 523.

Jr. v. John P. Greeley, et al., in the case of Civil No. 1205–65,[18] for the same reasons assigned herein.

Counsel for the plaintiffs shall submit separate appropriate orders for judgment in stated amounts, with costs, in both this action and Civil No. 1205–65.

18. Since the same issue of law is presented in both cases, it was stipulated by counsel in Civil No. 1205–65 that the decision here should be dispositive there.