**Frank SCHONFELD, Individually and as Secretary-Treasurer of District Council 9, International Brotherhood of Painters and Allied Trades, AFL–CIO, Plaintiff-Appellee,**

v.

**John PENZA, as Chairman and member, et al., Defendants-Appellants.**

**Isaac SCHWARTZ et al., Plaintiffs-Appellees,**

v.

**Morris LEVY, Individually and as President of District Council No. 9, International Brotherhood of Painters and Allied Trades, AFL–CIO, Defendant-Appellant.**

**Nos. 570, 571, Dockets 72–2373, 72–2382.**

United States Court of Appeals, Second Circuit.

Argued Jan. 19, 1973.

Decided April 23, 1973.

---

Michael F. Dennis, New York City (Saul I. Weinstein, New York City, of counsel), for appellants Penza and others.

Stephen C. Vladeck, New York City, for Intervenor International Brotherhood of Painters and Allied Trades, AFL–CIO, amicus curiae.

Martin Raphael, Long Island City, N. Y., for appellee Schonfeld.

Julius S. Impellizzeri, New York City (William Hoppen, New York City, of counsel), for appellees Schwartz and others.

Before FRIENDLY, Chief Judge, OAKES and TIMBERS, Circuit Judges.

OAKES, Circuit Judge:

The appeal here is from a preliminary injunction granted to restrain the ousting of a union official and the holding of an interim election.

These two cases, consolidated for trial and appeal, result from the infighting that has marked the politics of the New York painters union, District Council No. 9 (the District Council), a group of locals of the International Brotherhood of Painters and Allied Trades (the International). Suit was brought by the

appellees to prevent the institution of penalties meted out by the District Trial Board and modified by the International based on a decision by the Trial Board that appellee Schonfeld had committed acts violating the constitution and by-laws of the International. The cases involve the construction of important provisions of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 401 et seq.

The first case was brought by Frank Schonfeld, the Secretary-Treasurer (the chief executive officer of the District Council and the only official elected directly by the general membership), to restrain members of the Trial Board of the District Council and the President of the International from enforcing a decision of the Trial Board removing Schonfeld from office and declaring him ineligible for office for five years. Schonfeld has exhausted intra-union remedies by appeal to the General Executive Board (GEB) of the International. That appeal sustained the Trial Board's removal of Schonfeld from office and ordered an immediate interim election to fill Schonfeld's position but modified the Trial Board's penalty by making Schonfeld eligible to run in the regular election to be held in June of 1973. Immediately after the GEB decision the second case (hereinafter sometimes the "Schwartz action") was brought by rank and file members of locals affiliated with the District Council to restrain the International from carrying out the punishment for Schonfeld's alleged union crimes.[1] In both cases it was urged essentially that the District Council Trial Board was stacked against Schonfeld, that he was denied a fair hearing and that the purpose of the charges was to limit Schonfeld in his efforts to "democratize" the Council.[2]

The court below granted preliminary injunctive relief on the basis that Schonfeld's removal and disqualification for re-election was an interference with the rights of members of the locals "to choose their own representatives," 29 U.S.C. § 401(a), "to nominate candidates," 29 U.S.C. § 411(a)(1), "to vote in elections," *id.*, and "to express any views, arguments or opinions . . . . " 29

---

1. The charges against Schonfeld for which he was tried by the "Trial Board" of the District Council and found wanting by a 3–1 vote were that he by-passed the Council's "Agreement Committee" in agreeing that a tapers' local rather than a painters' local should have jurisdiction over certain taping and patching work preparatory to painting and that he had misrepresented the facts in presenting this matter to the Council Delegates.

2. The District Council had been, as found by District Judge Frankel, for many years dictatorily and repressively run by Martin Rarback. Schonfeld v. Raftery, 271 F. Supp. 128, 131 (S.D.N.Y.), aff'd, 381 F.2d 446 (2d Cir. 1967). When Schonfeld ran against Rarback (unsuccessfully) in 1961 he was subjected to intra-union discipline which was enjoined by District Judge Murphy as lacking in due process. Yochim v. Caputo, 61 Civ. 2223 (S.D.N.Y., Oct. 24, 1962) (unreported). This was not the only intra-union LMRDA litigation involving the District Council. *See* Salzhandler v. Caputo, 316 F.2d 445 (2d Cir.), cert. denied, 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963) (member could not be disciplined by union for libel relative to management of union funds). The subsequent trusteeship instituted by the International was dissolved by Judge Frankel's order as in bad faith and to keep the Rarback group in power in Schonfeld v. Raftery, *supra*, 271 F.Supp. at 147, and it was as a result of the election held as a part of the relief ordered by Judge Frankel that Schonfeld was elected to succeed Rarback in 1967 and again in 1970. Robins v. Rarback, 325 F.2d 929 (2d Cir. 1963), cert. denied, 379 U.S. 974, 85 S.Ct. 670, 13 L.Ed.2d 565 (1965), involved a different plaintiff, but the same union and the issues of member discipline and alleged electoral abuses. Schonfeld v. Raftery, 335 F.Supp. 846 (S.D.N.Y.1971) (Lasker, J.), is another and separate LMRDA case involving the International and District Council 9. At least five other lawsuits involving the principals here have been instituted, some of which are pending. We commend Judge Brieant below for his evident assiduous efforts to bring harmony to the Council and terminate the feud. Like the Hatfields and McCoys, however, it appears that District Council No. 9 prefers to keep on "feudin' and fusin' and a-fightin'."

U.S.C. § 411(a)(2).[3] The court went on to say that "If the activities of the anti-Schonfeld clique are intended to chill Schonfeld's free speech, or the freedom of speech of other members who may be deterred by the difficulties experienced by Schonfeld," such activity could also be a sufficient basis for the cause of action asserted by the rank and file in the Schwartz action. Finally, relying on Martire v. Laborers Local 1058, 410 F. 2d 32, 35–36 (3rd Cir.), cert. denied, 396 U.S. 903, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969), and Mamula v. Steelworkers Local 1211, 202 F.Supp. 348 (W.D.Pa. 1962), the court held that prohibitions on a removed officer's running for office affected his status as a union member and therefore could not be imposed without compliance with the procedural safeguards of 29 U.S.C. § 411(a)(5).[4] The preliminary relief granted by the court took the form of enjoining the disciplinary actions ordered by the GEB, including Schonfeld's removal from office, and staying the conduct of the special election. Interim control of the affairs of the District Council continued to be vested jointly in Schonfeld and Morris Levy, President of the District Council, as it had been by stipulation and order after the start of the Schonfeld action.

We commence by disagreeing with the court below in respect to jurisdiction of the Schwartz action insofar as it challenges Schonfeld's removal from office and ineligibility to run. Title IV of the LMRDA, 29 U.S.C. § 481 et seq., governs the election of union officers and requires that union members have "a reasonable opportunity . . . for the nomination of candidates . . . and . . . the right to vote for or otherwise support the candidate . . . of [their] choice." 29 U.S.C. § 481(e). The union member's remedy for Title IV violations, following exhaustion of intra-union remedies, is to file a complaint with the Secretary of Labor, 29 U.S.C. § 482(a), who in turn may then seek relief in the federal courts upon finding probable cause to believe Title IV has been violated. 29 U.S.C. § 482(b). Cf. Trbovich v. UMW, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972) (intervention by union member in suit brought by Secretary). Here, however, the union members relying on Title I,[5] not Title IV, of the LMRDA, did not try to get the Secretary to file suit but rather did so themselves. In Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), the Court held that the Secretary could not be by-passed and that Title I rights were "[p]lainly . . . no more than a command that members and classes of members shall not be *discriminated against* in their right to nominate and vote." 379 U.S. at 139, 85 S.Ct. at 295 (emphasis supplied). The concurring opinion (Stewart and Harlan, JJ.) thought this too

---

3. The court correctly noted the proviso to § 411(a)(1), "subject to reasonable rules and regulations in such organization's constitution and bylaws" and to § 411(a)(2) : *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
29 U.S.C. § 411(a)(2).

4. Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing. 29 U.S.C. § 411(a)(5).

5. Every member of a labor organization shall have equal rights and privileges . . . to nominate candidates, to vote in elections or referendums of the labor organization, . . . and to participate in the deliberations and voting . . . subject to reasonable rules and regulations in such organization's constitution and bylaws.
§ 101(a)(1), 29 U.S.C. § 411(a)(1).

narrow a construction of Title I and that "there are occasions when eligibility provisions can infringe upon the right to nominate," or more accurately as the opinion put it subsequently, "the equal right to nominate." 379 U.S. at 143, 85 S.Ct. 292. But in any event by an 8–1 vote the *Calhoon* Court held that Title I rights were not violated by restricting eligibility for elective office to 5-year members of the national maritime union with 180 days or more of seatime service in each of two of the preceding three years on unionized vessels. Thus, the *Calhoon* union members had to seek relief in the first instance from the Secretary, not the federal district court.

■ The Schwartz action is indistinguishable from *Calhoon* insofar as it challenges Schonfeld's removal from office. The exclusion of Schonfeld from eligibility for the by-election does not infringe the "equal right," *i. e.*, the Title I right of District Council 9 members to nominate or elect since they personally are not discriminated against. They have the same right as any other union members to nominate any eligible candidate. If the order below in the Schwartz action were based solely upon Schonfeld's removal from office or ineligibility to run in the interim election, then we would be required to reverse it. But, as mentioned above, the Schwartz action plaintiffs have also alleged in their complaint that the District Council's removal of Schonfeld from office and the restrictions on his subsequent eligibility constitutes a form of intimidation of the membership and of their duly elected officers and amounts to reprisal for efforts by Schonfeld and others to advocate and implement changes in union structure and procedures. Moreover, these allegations are supplemented by those in the Schonfeld complaint that the charges against Schonfeld were pretextual, that they were brought for the purpose of suppressing opposition and dissent within the union, and that they were "an expression of an

anti-democratic policy and practice pursued over the past twenty years" which included a policy of "bringing charges or causing charges to be brought against those who exercise freedoms of speech, press, and assembly in their opposition." As we read these allegations, they raise the question whether the sanctions on Schonfeld in the peculiar context of the history of union factionalism presented here impede or infringe upon the free speech and association rights of union members protected by § 101(a)(2) of Title I of the LMRDA, 29 U.S.C. § 411(a)(2). *See, e. g.*, Machinists Grand Lodge v. King, 335 F.2d 340, 343–347 (9th Cir.), cert. denied, 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334 (1964) (§ 101(a)(2) bars discharge of union officers for campaign activities); Salzhandler v. Caputo, 316 F.2d 445 (2d Cir.), cert. denied, 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963) (intra-union discipline of union member for alleged "libel" of New York painters' union official barred by § 101(a)(2)). When rights of free speech and of association —as opposed to the rights of voting and election—of union members are invaded by the actions of union officers, the requirement of initial appeal to the Secretary under Title IV is inapplicable. Navarro v. Gannon, 385 F.2d 512, 520 (2d Cir. 1967), cert. denied, 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294 (1968).

We by no means suggest, however, that the free speech rights of union members are threatened or infringed upon every time a political dispute occurs in a union and the dissident members interpret some action by union officials as a threat. We do not wish to lend credence to any suggestion that the mere appendage of free speech allegations to an election complaint is sufficient to take the case out of Title IV's requirements as interpreted by *Calhoon*. But federal courts need not necessarily wait to intervene until some sanction is directly imposed on union dissidents, for once suppressed "the democratic spirit" within a union "may not soon be re-

vived." Navarro v. Gannon, *supra*, 385 F.2d at 520.

■■ The competing values between Title I rights and Title IV procedural requirements are best reconciled, in our opinion, by limiting initial federal court intervention to cases where union action abridging both Title I and Title IV can be fairly said, as a result of established union history or articulated policy, to be part of a purposeful and deliberate attempt by union officials to suppress dissent within the union. *Cf.* Navarro v. Gannon, *supra*, 385 F.2d at 520. We think that the allegations in the complaints here were sufficient to meet this test. Moreover, given the lengthy history of intra-District warfare over the years, see note 2 *supra,* these were not mere conclusory allegations and certainly had some basis in fact, as the court below found, albeit in qualified language. Thus, the district court had jurisdiction over the free speech aspects of the Schwartz action complaint.

■ Similarly, the district court had jurisdiction over Schonfeld's individual action. He too asserts a free speech claim under Title I which, as mentioned, is cognizable in federal court without an initial appeal to the Secretary of Labor. Furthermore, the district court had jurisdiction over Schonfeld's claim that restrictions on his future eligibility for office not imposed in accordance with the procedures specified in § 101(a)(5) of the LMRDA, 29 U.S. C. § 411(a)(5), violate his rights as a union member and are actionable under § 102 of the Act, 29 U.S.C. § 412. We take the view, along with the Third and the Seventh Circuits,[6] that Title I of the Act protects the union-member relationship, but not the union-official or the union-employee relationship, and that hence removal from union office gives rise to no rights in the removed official *as an official* under the Act. Just as fully, however, we agree that rendering a man ineligible from seeking union office, whether for five years or three months, affects him *as a member* and permits him under the Act to challenge the fairness of the procedures resulting in such political exile. Thus the district court had jurisdiction of Schonfeld's individual action.

We next turn to the question whether the district court properly exercised its equitable discretion in granting a preliminary injunction.[7] We agree with the district court's finding of Schonfeld's and Schwartz action plaintiffs' probable likelihood of success on the merits, in view of the history of the almost suicidal union warfare for which the Rarback contingent bears much of past blame and the procedures[8] em-

---

6. Air Line Stewards and Stewardesses, Local 550 v. TWU, 334 F.2d 805, 808–809 (7th Cir. 1964), cert. denied, 379 U.S. 972, 85 S.Ct. 648, 13 L.Ed.2d 563 (1965). But see Hamilton v. Guinan, 199 F.Supp. 562, 564–565 (S.D.N.Y.1961).

7. We do not decide the question whether because the district court had jurisdiction over the Schwartz action plaintiffs' free speech Title I claims it also had "pendent jurisdiction" over the claims under Title IV.

8. The trial court found plaintiffs had a probability of success on the merits on three of their claims: (1) that under the union constitution the District Council Trial Board had no jurisdiction to try the charges in the first place; (2) that the union's statute of limitations had run in regard to the tapers' jurisdiction charge;

and (3) that Schonfeld was not afforded a full and fair hearing as required by § 101 (a)(5) of the LMRDA, 29 U.S.C. § 411 (a)(5). Our affirmance of the preliminary injunction is based upon the third of these findings. *Cf.* Falcone v. Dantinne, 420 F.2d 1157, 1166 (3rd Cir. 1969). In view of the intense politicalization of the Local, it would be almost impossible to find an impartial trial board from the membership. We agree with the district court that any bias on the part of the trier of fact would not be cured by appellate review and that in any event the GEB had an interest in the outcome of the appeal. Review of the other findings we leave to later stages of these proceedings, or other cases, when we have a more fully developed factual record. Suffice it here to say that an injunction issued on the basis of the findings as to jurisdiction and

ployed in Schonfeld's "trial" resulting in his removal and ineligibility. The district court found that Schonfeld had an adequate remedy at law in an action for damages to recover his lost salary and perquisites of office in connection with his claim that his removal from office violated Title I. We disagree, especially in the light of the findings below, affirmed here, relative to the free speech and association claims. The court below, moreover, made the quite practical finding that it would also grant preliminary relief on the basis of preserving the status quo on the merits in connection with Schonfeld's § 101(a)(5) claim, 29 U.S.C. § 411(a)(5), and his and the Schwartz members' § 101(a)(1) or free speech and association claims, 29 U.S.C. § 411(a)(1). Quite plainly to proceed by way of holding an expensive, distracting and perhaps mootness-inducing special election in January when the case was before the district court (now, by virtue of this appeal, April) would be absurd.

 True, the affirmance of the granting of the preliminary injunction may moot the question of the propriety of the ineligibility penalty. But assuming that ultimately the plaintiff members in the Schwartz case and Schonfeld do not prevail on their claims, there is nothing to prevent his *removal* at that time (assuming he has been re-elected in May so as to be in office), or the holding of a special election thereafter. In other words, the resolution of his controversy *against* Schonfeld would not prevent the ultimate obtaining of a last full pound of flesh from him if that is the goal still sought. Schonfeld continues to stand within the District Council's danger. Contrariwise, if Schonfeld prevails on the issues in one forum or the other or both, or if the rank and file union members who are plaintiffs in the Schwartz case prevail on their free

speech and association claims, the fact that the pound of flesh has not here been taken will suit the occasion. We hold that the district court thus did not abuse its discretion in granting a preliminary injunction.

The judgment of the district court is affirmed. In view of an application by Schonfeld for a modification of the injunction which has been submitted to us but can be dealt with more appropriately by the district court, the mandate will issue forthwith.

---

the statute of limitations alone would raise difficult issues as to the extent § 101(a)(5) authorizes federal district courts to review union disciplinary proceedings.

*Cf.* Boilermakers v. Hardeman, 401 U.S. 233, 241–247, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971).