Emanuel C. RUSSO

v.

**LOCAL UNION 676 OF the UNITED AS-
SOCIATION OF PLUMBING AND
PIPEFITTING INDUSTRY OF the
UNITED STATES AND CANADA et al.**

Civ. No. N–74–9.

United States District Court,
D. Connecticut.

Feb. 7, 1974.

Norman Zolot, Hamden, Conn., for plaintiff.

Elio C. Bellucci, Springfield, Mass., for defendants.

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS

NEWMAN, District Judge.

This suit raises issues concerning the appropriate roles of the Secretary of Labor, the National Labor Relations Board, and a District Court with respect to disputes that implicate Titles I and IV of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 411 et seq., and § 7 of the National Labor Relations Act (NLRA), 29 U.S.C. § 157. The suit was brought on January 8, 1974, by Emanuel Russo, who had previously been elected as business manager of the defendant union, Local 676 of the United Association of Plumbing and Pipefitting Industry of the United States and Canada. The officers of the union were also named as defendants. Jurisdiction is invoked under § 102 of the LMRDA, 29 U.S.C. § 412, to remedy alleged violations of plaintiff's rights secured by § 101(a)(1) and (5), 29 U.S.C. § 411(a)(1) and (5).

The complaint alleges a series of events that really constitute two distinct causes of action, the first concerning the plaintiff's claimed right to prevent the named individual defendants from taking office, and the second concerning the plaintiff's claimed right to prevent his own removal from office. Local 676 was chartered by the United Association in 1970, on condition that it adopt a constitution and bylaws and nominate and elect officers in accordance with the constitution of the United Association. The Local endeavored to comply by adopting bylaws on January 5, 1971, which were approved by the United Association on January 20, 1971. Thereafter nominations and elections were held. On April 6, 1971, along with the officers, plaintiff was elected business manager for a three-year term commencing April 6, 1971.

During 1973, the negotiation committee of the union, which, as required by the union's bylaws, consists of the union's officers, conducted negotiations with a contractors' group, the National Automatic Sprinkler & Fire Control Association. Plaintiff protested to the union membership that the officers could not act as a negotiating committee because they were supervisors, and that any agreement reached would be invalid under the NLRA because of the supervisors' negotiating role. He also warned that any agreement would be invalid under the NLRA if supervisors participated in a vote approving it. Despite plaintiff's protests, the negotiating committee reached an agreement with the contractors, which was approved by the union's membership in April, 1973. On April 12, 1973, plaintiff instituted unfair labor charges with the NLRB, complaining that supervisors had negotiated and voted to approve the agreement. Plaintiff's charges resulted in the issuance of a complaint by the Board's General Counsel on October 4, 1973. That complaint is currently awaiting assignment for hearing.

Events concerning plaintiff's status as an officer began on August 21, 1973, when defendant Jasiunas, the union's recording secretary, gave notice of special meetings called to amend the union's constitution and bylaws. Proposed for change were the months for nominating and electing officers and the business manager. Nominations were to be held in November instead of March, and elections in December, instead of April. The changes were approved at a membership meeting held October 2, 1973. Pursuant to the amended bylaws, nominations for officers and business manager were held on November 6, 1973, and

elections on December 4, 1973. Plaintiff was nominated for business manager, but was defeated in a secret ballot election by a vote of 61 to 13. The successful candidates for officers and business manager are defendants in this suit.

On January 8, 1974, plaintiff filed this suit and obtained a temporary restraining order, barring the defendants from being installed in office. On January 17, 1973, a hearing was held on plaintiff's motion for a preliminary injunction. Testimony and exhibits were presented by plaintiff. Because time did not permit presentation of the defendants' evidence, the parties agreed to have the temporary restraining order extended pending disposition of defendants' motion to dismiss, on the understanding that if the motion were denied, defendants would have an opportunity to present evidence before decision was reached on plaintiff's motion for a preliminary injunction.

Plaintiff's first cause of action concerns his challenge to the right of the individual defendants to take office. His argument proceeds from the undisputed premise that interference by supervisors in the collective bargaining process violates rights of union members protected by § 7 of the NLRA. NLRB v. Employing Bricklayers' Association of Delaware Valley and Vicinity, 292 F.2d 627, 629 (3d Cir. 1961); Local 636 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL–CIO v. NLRB, 109 U.S.App.D.C. 315, 287 F.2d 354 (1961); Nassau & Suffolk Contractors' Association, Inc., 118 N.L.R.B. 174, 183–84 (1957). Plaintiff contends that the defendants who were elected to office are supervisors. He does not challenge the right of supervisors in general to hold office. However, he challenges the right of the individual defendants to become officers of the defendant union because this union's bylaws require the officers to constitute the union's negotiating committee. Plaintiff also challenges the individual defendants' right to become officers on the ground that supervisors participated in their election and in the election of a business manager who has continuing collective bargaining responsibilities.

The critical issue is whether the rights plaintiff alleges have been infringed are rights protected by § 101(a)(1) of the LMRDA. If so, this Court can proceed to consider the merits of the claims, but if the role of supervisors, either as officer-negotiators or as electors of negotiators, impairs only rights protected by § 7 of the NLRA or Title IV of the LMRDA, then relief must be sought from either the NLRB, San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L. Ed.2d 775 (1959), or the Secretary of Labor, Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964).

Section 101(a)(1) assures union members "equal rights and privileges" to nominate candidates and vote in union elections. *Calhoon* emphasized that the essential protection afforded is against discrimination among union members in their exercise of the franchise, rather than rules concerning who is eligible for election. Even the concurring opinion wanted § 101(a)(1) broadened only to include rules that distort the basic democratic process. Calhoon v. Harvey, *supra*, 379 U.S. at 147, 85 S.Ct. 292. This Circuit has also emphasized that § 101(a)(1) is properly invoked to protect against union action that is "part of a purposeful and deliberate attempt . . . to suppress dissent within the union." Schonfeld v. Penza, 477 F.2d 899, 904 (2d Cir. 1973). The values to be protected are those relevant to labor union democracy, rather than to union-management labor relations.

Plaintiff does not allege any discrimination among union members, nor, in this first cause of action, any stifling of free speech or dissent.

■ Plaintiff does not have a right protected by § 101(a)(1) to prevent the installation of alleged supervisors as officers, even though their activity as con-

tract negotiators may well give rise to an unfair labor practice within the Board's jurisdiction. Plaintiff fears the Board's jurisdiction may be unequal to the task, since, as he contends, the Board may have no authority to remove defendants as officers. But the Board clearly has authority to prevent the enforcement of any agreement improperly negotiated because of supervisor participation, and may well have authority to order the officers (if their supervisor status is established) to refrain from subsequent negotiations. If this occurs, the bylaw provision constituting the officers as negotiators will simply have to give way to superior requirements of federal law. Even if the Board's authority cannot be exercised so prophylactically, such deficiency does not create a corresponding increase in a district court's authority under § 101(a)(1). If presently existing remedies are inadequate, as plaintiff fears, the solution must be supplied by Congress.

▆ Nor does plaintiff have a right protected by § 101(a)(1) to prevent the installation of officer-negotiators who have been elected by alleged supervisors. If plaintiff's vote for himself and his choice of officers was diluted because supervisors were improperly permitted to vote, the remedy must be sought from the Secretary of Labor pursuant to Title IV. *Cf.* Schonfeld v. Raftery, 359 F. Supp. 380 (S.D.N.Y.1973).[1]

Plaintiff's second cause of action challenges the defendants' action in precipitating an election that resulted in his replacement as business manager three months before the expiration of the term for which he was elected. He asserts this action violated his rights protected by § 101(a)(1) and (5), the latter

guarding against discipline without adequate procedural protection. His factual allegations appear more designed to assert denials of a free speech right protected by § 101(a)(2) or a right to initiate action before an administrative agency, protected by § 101(a)(4). However construed, the claim is not adequate to invoke the protection of § 101.

▆ In the first place, it is somewhat doubtful whether § 101, enacted to promote union democracy, can ever be invoked as protection against a special election, even if the election is called with the specific motivation of voting an elected official out of office. Political scientists generally view initiative and recall procedures as providing more, not less, democracy. In this case, unlike Schonfeld v. Penza, *supra,* plaintiff was not disqualified from seeking office at the specially called election.[2]

▆ Secondly, plaintiff's claim encounters the obstacle that the specially called election was at least in conformity with, if not required by, the United Association's constitution. That constitution (§ 130(a)) specifies that nominations for officers of local unions shall be held in November or May, and elections in December or June. Having elected officers in April, 1971, the local union was certainly entitled to select the November-December option, since the May-June option would have resulted in no elections within a three-year interval, in violation of Title IV, 29 U.S.C. § 481(b). Plaintiff contends that the United Association was not pressing to have the local union change its election timetable. However, a change that does in fact conform to the lawful rules of the parent body does not deny plaintiff any federally protected rights, even if,

---

1. Even Judge Lasker's opinion upholding the sufficiency of the complaint in Schonfeld v. Raftery, 335 F.Supp. 846 (S.D.N.Y.1971), conceded that Title IV procedures are more likely appropriate if a complaint, challenging dilution of voting power, seeks relief with respect to a particular election.

2. In DeCampli v. Greeley, 293 F.Supp. 746, 752 (D.N.J.1968), which upheld a discharged

union officer's Title I claims, the court specifically distinguished Sheridan v. United Brotherhood of Carpenters, 306 F.2d 152 (3d Cir. 1962), which rejected such a claim, on the ground that in *Sheridan* the decision to oust the officer was ultimately submitted to the union membership for decision, whereas in *DeCampli,* the decision was made by the union president.

as plaintiff alleges, defendants were motivated to bring their bylaws into conformity in the hope that a December election would result in plaintiff's defeat.

■ Thirdly, § 101 "gives rise to no rights in the removed official *as an official* under the Act." Schonfeld v. Penza, *supra,* 477 F.2d at 904 (emphasis original). The cases upholding an ousted officer's claim under § 101 have involved a removal from office and usually an exclusion from holding office. Schonfeld v. Penza, *supra*; Grand Lodge of Int'l Assn. of Machinists v. King, 335 F.2d 340 (9th Cir. 1964); Salzhandler v. Caputo, 316 F.2d 445 (2d Cir. 1963); De-Campli v. Greeley, 293 F.Supp. 746 (D. N.J.1968). Since plaintiff was eligible for nomination and election under the revised election timetable of the amended bylaws, his basic claim is for protection "as an official" for the balance of the three-year term that was prematurely ended by his election defeat. While plaintiff does allege that the bylaw amendment that led to the December election was a retaliatory tactic that impaired his free speech rights, there are no allegations of the type of deliberate and long-standing suppression of free speech within the union that Schonfeld v. Penza, *supra,* indicated would invoke § 101(a)(2) protection. And it has consistently been held that § 101(a)(5) does not afford protection against removal from union office, even by summary administrative action, much less by election. Grand Lodge of Int'l Assn. of Machinists v. King, *supra,* 335 F.2d at 343 and n. 7.

Apart from federal law and despite the change in union bylaws, plaintiff may well have a valid claim that he was improperly denied the final three months of his term of office as business manager. In amending the bylaws, the union made no transitional provision to specify whether the old officers would have their original terms abbreviated or the new officers would serve abbreviated terms. Moving the election date back from April to December obviously meant that one group or the other would serve less than full three-year terms,[3] or that three-year terms would continue to commence in April, even though elections were in December. Defendants seem to assume that a December, 1973, election automatically required a shortening of the terms of incumbent officers. But plaintiff can contend with equal, if not greater logic, that since the local union's bylaw provision specifying three-year terms was not amended, he had a right to remain in office until April 6, 1974. Moreover, § 130(e) of the United Association's constitution provides that the length of a term remains intact, in the event an election date is advanced for certain purposes.

Whatever the merit of plaintiff's claim in this regard, it arises solely under the constitution and bylaws of the United Association and the local union, and is therefore a state law claim over which this Court lacks jurisdiction.[4] Since there has not been a full development of the merits of the claims alleged to be federally cognizable, it is not appropriate to adjudicate the state law claim in the exercise of pendent jurisdiction.

Accordingly, the complaint will be dismissed for failure to state a claim upon which relief can be granted, and the

---

3. The bylaw change did not even specify whether the date was being moved back to the December preceding April, 1974, or ahead to the following December. However, the union is certainly entitled to construe its own bylaw to mean the earlier December, a reading that avoids a conflict with the three-year limitation of 29 U.S.C. § 481(b).

4. Possibly, as defendants appear to contend, any complaint by plaintiff in this regard must be presented to the Secretary of Labor to secure redress under Title IV. This is not necessarily so. While Title IV does require that elections be held "in accordance with the constitution and bylaws" of a union, 29 U.S.C. § 481(e), plaintiff, in this portion of his complaint, is not challenging the conduct of an election, but the action of a union in installing newly-elected members prior to what he alleges is the lawful expiration date of his three-year term.

temporary restraining order will be vacated. Judgment will be stayed and the temporary restraining order continued in effect until 5:00 p. m., February 11, 1974, to permit plaintiff to apply to the Court of Appeals for a stay pending appeal.