**Gene LASKI et al., Plaintiffs,**

v.

**INTERNATIONAL ORGANIZATION OF MASTERS, MATES AND PILOTS, Defendant.**

**No. 80 Civ. 4906 (CBM).**

United States District Court, S. D. New York.

Sept. 26, 1980.

Hall, Clifton & Schwartz by Burton H. Hall, New York City, for plaintiffs.

Joan Stern Kiok, New York City, for defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

On August 25, 1980, plaintiffs filed a complaint seeking to permanently enjoin

defendant union, the International Organization of Masters, Mates and Pilots (IOMMP), and certain of its officers from disqualifying certain union members as candidates in an upcoming union election. All plaintiffs are members of defendant union. On August 26, 1980, this court held a hearing on plaintiffs' request for a temporary restraining order to stop the mailing of the ballots for the election at issue. This court determined at that hearing that the ballots had already been mailed on the afternoon of August 25, 1980. Accordingly, the request for a TRO was denied. Plaintiffs then altered their position to request a preliminary injunction preventing tabulation of the ballots after they are returned. This court requested the parties to submit briefs discussing whether the court is deprived of subject matter jurisdiction by Title IV of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 481–483 (LMRDA). For the reasons stated below, this court concludes that it does lack subject matter jurisdiction and accordingly dismisses the complaint.

Section 403 of the LMRDA, 29 U.S.C. § 483, provides in pertinent part:

> Existing rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections *prior to the conduct thereof* shall not be affected by the provisions of this title. *The remedy provided by this title for challenging an election already conducted shall be exclusive.* (Emphasis added).

The threshold question thus posed by the instant facts is whether the mailing of ballots to IOMMP members constitute an "already conducted" election. If it does, the plaintiffs must follow the procedure described in Title IV of the LMRDA for challenging completed elections. That procedure requires exhaustion of complaint procedures within the union followed by a petition to the Secretary of Labor. *See* 29 U.S.C. § 482; *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964).

The Second Circuit has not delineated the point at which a union election has been "conducted" for purposes of applying 29 U.S.C. § 483. However, the Third Circuit explicitly decided this question in *McDonough v. Local 825, International Union of Operating Engineers*, 470 F.2d 261 (3rd Cir. 1972) (*McDonough*). *McDonough* involved an appeal from a lower court order requiring defendant union to submit the ballots cast in a contested election to an arbitration association for a recount. The Third Circuit concluded that "once balloting has occurred" the district court lost its subject matter jurisdiction by operation of 29 U.S.C. § 483.

The *McDonough* decision resulted from the Third Circuit's desire to effectuate the congressional intent underlying Title IV. That portion of the LMRDA is intended to provide the maximum opportunity for unions to supervise their own election disputes. 470 F.2d at 263–264. *See also* S.Rep.No.187, 86th Cong., 1st Sess.; *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). As the Court in *McDonough* explained:

> To say, as the district court did, that the election is not completed until the result is certified would set up a race to the courthouse since it is difficult to believe that any complaining party would choose to wait until a result had been finalized to bring suit because he would then have to use §§ 481–483 .... It would cause the judicial interference Congress attempted to avoid. 470 F.2d at 264. (Citations omitted).

Plaintiffs' contention that *McDonough* actually supports their position is untenable. Plaintiffs point out that the ballots in *McDonough* had already been counted, and claim as a result that the decision must be read to require tabulation of ballots before an election can be considered "conducted" for the purpose of applying 29 U.S.C. § 483. A fair reading of the opinion shows that the crucial point is reached "once balloting has occurred" and that 29 U.S.C. § 483 is activated before "the [election] result is certified." *Id.*

■■ This court finds the reasoning in *McDonough* persuasive. The basic Congressional policy behind all of Title IV of the

LMRDA is that federal courts are not to be used to disrupt union elections. 29 U.S.C. § 483 is an important part of that policy. Even assuming grounds for a preliminary injunction existed, such action by this court after the actual voting process is under way would seriously undermine the goals of Title IV of the LMRDA. Reaching the merits of plaintiffs' case after the election process has advanced to the voting state opens the door to significant federal court interference in union election practices. Such a result is inconsistent with the policies of Title IV.

█ In any case, this court lacks subject matter jurisdiction even if the election at issue has not been "conducted" for purposes of 29 U.S.C. § 483. The Supreme Court has held that the procedures contained in Title IV are the exclusive remedy for violations of Title IV rights. *Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964) (*Calhoon*). More importantly, *Calhoon* also holds that a district court must scrutinize the allegations made in a complaint to determine whether "in substance" they allege violations of Title IV rights. 379 U.S. at 138, 85 S.Ct. at 295. If the alleged improper conduct affects Title IV rights, then a district court lacks subject matter jurisdiction regardless of the provisions of the LMRDA actually cited by a complaint as conferring jurisdiction. *Id.*

Calhoon bears considerable factual similarity to this case. There, as here, plaintiffs alleged violations of Section 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1), which guarantees union members "equal rights . . . to nominate candidates . . . and to vote in elections or referendums of [a] labor organization."[1] Both *Calhoon* and the instant case were prompted by disqualification of candidates attempting to run for union office. The Supreme Court emphatically stated:

Without setting out the lengthy legislative history which proceeded the passage of this measure, it is sufficient to say that the Act itself shows clearly by its structure and language that *the disputes here, basically relating as they do to eligibility of candidates for office, fall squarely within Title IV of the Act* and are to be resolved by the administrative and judicial procedures set out in that Title. 379 U.S. at 141, 85 S.Ct. at 296. (Emphasis added).

Examination of plaintiffs' complaint and affidavits discloses that this case essentially turns on questions of candidate eligibility. Plaintiffs complain that certain candidates were illegally disqualified in violation of 29 U.S.C. § 482 because they belonged to a group of dissident candidates, the "Unity Slate," opposing the incumbent leadership. Yet plaintiffs do not disagree with the affidavit of one of defendant's officers which states that a number of "Unity Slate" candidates were nominated successfully. In addition, a number of candidates not affiliated with the "Unity Slate" were also disqualified for a variety of reasons. Plaintiffs' affidavit filed in conjunction with its Reply Memorandum On the Issue of Jurisdiction shows that plaintiffs admit the existence of problems in the qualifications of certain "Unity Slate" members. These problems involve failure to comply with various union rules concerning the payment of dues and the procedures for becoming a candidate in a union election. The facts before this court fail to support even a colorable claim that defendant's action constitutes a systematic attempt to discriminate against "Unity Slate" members. *See Schonfeld v. Penza,* 477 F.2d 899 (2d Cir. 1973).[2]

---

1. Federal court jurisdiction to hear claims alleging violations of Title I of the LMRDA is found in 29 U.S.C. § 412, which reads in pertinent part:

   Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the

United States for such relief (including injunctions) as may be appropriate.

2. In *Schonfeld v. Penza,* 477 F.2d 899 (2d Cir. 1973) plaintiffs alleged violations of the "equal rights" and "free speech" provisions in Title I of the LMRDA, 29 U.S.C. §§ 411(a)(1) and 411(a)(2), respectively. As this court does today, the Second Circuit concluded that since

In addition, from the affidavit mentioned above it appears that plaintiffs are attacking, at least in part, the pre–election procedures used by defendant, rather than the act of disqualifying certain candidates for failure to follow those procedures. (Plaintiffs' Affidavit in Support of Reply Memorandum On Issue of Jurisdiction ¶¶ 14, 15.) To the extent that plaintiffs challenge the validity of pre–election requirements, they are in precisely the same position as the plaintiffs in *Calhoon, supra*. As the Supreme Court stated in *Calhoon*, "Title IV, not Title I, sets standards for eligibility and qualifications of candidates and officials and provides its own separate and different administrative and judicial procedures for challenging those standards." 379 U.S. at 138, 85 S.Ct. at 295.

The violations alleged in plaintiffs' complaint, even if true, are infringements of plaintiffs' rights under Title IV of the LMRDA, and this court lacks jurisdiction to examine those allegations. Plaintiffs' first two causes of action are therefore dismissed. Since these two causes of action were the federal question portion of the complaint which provided the jurisdictional basis for the pendent state law claims, the balance of the complaint must also be dismissed. This dismissal is without prejudice to plaintiffs' rights to pursue their remedies under 29 U.S.C. §§ 481–483.

SO ORDERED.

the alleged "equal rights" violations involved candidate eligibility, the district court lacked jurisdiction over that portion of the complaint. The Second Circuit reached this result despite its admission that the record disclosed "as a result of established union history or articulated policy ... a purposeful and deliberate attempt by union officials to suppress dissent within the union." 477 F.2d at 904. The facts before this court are much less extreme. Mere allegations that some candidate disqualifications were motivated by discriminatory intent are insufficient to transform this case, obviously a Title IV action, into a suit under Title I.