George CALOUMENO, Joseph C. Johnson, Jr., Jacqueline Battle, Denise Berkley, George Boncoraglio, James D. Harrison, and Dennis J. Tobin, Plaintiffs,

v.

William L. McGOWAN, as President of the Civil Service Employees Association, Inc., Local 1000, American Federation of State, County and Municipal Employees, AFL–CIO and the Civil Service Employees Association, Inc., AFSCME, AFL–CIO, Defendants.

Dennis TOBIN, as President of the New York City Department of Labor, Local 350 of the Civil Service Employees Association, Counter-Claim Plaintiff,

v.

George CALOUMENO,
Counter-Claim Defendant.

No. 83 Civ. 4932 (GLG).

United States District Court,
S.D. New York.

Sept. 4, 1987.

Paula J. Omansky, New York City, for plaintiffs.

Roemer and Featherstonhaugh, P.C., Albany, N.Y., for defendants; Michael J. Smith, of counsel.

## OPINION

GOETTEL, District Judge.

There have been several prior decisions rendered in this case concerning a variety of motions. Consequently, we will assume familiarity with the facts in this case, which is brought pursuant to the Labor-Management Reporting and Disclosure Act, codified as amended at 29 U.S.C. §§ 401–531 ("LMRDA").

The plaintiff George Caloumeno has moved for summary judgment on his first and seventh causes of action. These are, respectively, for violation of his right to a full and fair hearing within the meaning of section 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5) (1982), and for breach of contract.

The defendants have made three motions. First, they have moved pursuant to Fed.R.Civ.P. 21 to add Metropolitan Region II of CSEA as a counterclaim plaintiff, and for summary judgment granting their counterclaims for conversion of an automobile and certain funds. Next, they have moved for summary judgment dismissing Caloumeno's first and seventh claims on the ground that Caloumeno has failed to demonstrate a violation of section 101(a)(5)

of the LMRDA. Finally, they have moved for summary judgment dismissing the following numbered claims, on the grounds that Caloumeno has failed to demonstrate violations of either LMRDA section 101(a)(1), 29 U.S.C. § 411(a)(1) (1982), LMRDA section 101(a)(2), 29 U.S.C. § 411(a)(2) (1982) or LMRDA section 609, 29 U.S.C. § 529 (1982): 2, 3, 4, 5, 8, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, and 29.

The claims numbered 19, 23, 25, and 27 pertain to alleged violations of the LMRDA free speech rights of Priscilla Bullock, Robert A. Nurse, Earnest Punter and Charlotte Rue. However, by order of Magistrate Harold J. Raby, dated December 4, 1984, these parties were "eliminated as plaintiffs." Subsequently, on January 15, 1985, Magistrate Raby recommended that this Court dismiss the action as to these plaintiffs as well as plaintiffs Battle, Berkley, and Harrison.

In accordance with Magistrate Raby's order of December 4, 1984, and in the absence of objection to his recommendation of January 15, 1985, the complaint is dismissed as to the plaintiffs/former plaintiffs Bullock, Nurse, Punter, Rue, Battle, Berkley, and Harrison.[1]

The collective effect of this action and our prior decisions is that there remains in this action only those causes of action numbered 1, 2, 3, 4, 5, 7, 11, and 17.[2] With the exception of claims 11 and 17, all of the remaining claims pertain to Caloumeno. Claims 11 and 17 pertain to the LMRDA free speech claims of plaintiffs Joseph Johnson and George Boncoraglio. It is to these remaining claims of Caloumeno, Johnson, and Boncoraglio, and the defendants' counterclaim for conversion, that the following discussion is addressed.

---

1. The twenty-ninth claim pertains to the LMRDA free speech rights of Dennis Tobin. However, both the plaintiffs and the defendants have acknowledged that Tobin has withdrawn as a plaintiff in this action. *See* Plaintiffs' Reply Memorandum (in opposition to defendants' earlier motion to add Local 350 as a party) at 14; Affidavit of Michael J. Smith in Support of Defendants' Motion for Summary Judgment at ¶ 7. Indeed Tobin is a counterclaim plaintiff.

Accordingly, the twenty-ninth claim is dismissed.

2. Caloumeno has conceded the invalidity of the sixth claim. *Caloumeno v. McGowan,* No. 83 Civ. 4932, slip op. at 9, n. 3 (S.D.N.Y. Jan. 9, 1984). In addition, the eighth and ninth "claims" concern remedies and are not separate causes of action *per se. Id.*

## DISCUSSION

### I. *Joinder of Metropolitan Region II as Counterclaim Plaintiff*

██ Under New York law, an unincorporated association such as Region II can bring suit by either its President or Treasurer. N.Y. Gen. Ass'ns Law § 12 (McKinney 1942). Neither such officer of Region II has sought to sue, and indeed Region II's president does not want to sue, and strongly opposes the motion to join. Moreover, the defendants/counterclaim plaintiffs do not argue that Region II is an indispensable party. They seek its joinder only to prevent a possible "hypertechnical" dispute over the allocation of any funds which may be recovered from Caloumeno. In light of the speculative nature of this concern, and the opposition of Region II's president, we deny the motion to join Region II as a counterclaim plaintiff.

### II. *Summary Judgment*

Before this Court may grant summary judgment on any of the claims raised before it, we must find that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of proof is on the movant, and we must resolve all ambiguities, and draw all reasonable inferences, against that party. *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (1984).

#### a. Counterclaims for Conversion

██ The parties do not dispute that Caloumeno did take title to and retain the car in question. However, they disagree over whether, as CSEA claims, Caloumeno simply converted the car for his own personal use, or whether Local 350 in fact gave the car to Caloumeno, either as reimbursement for his union-related expenses or as an honorarium.

Likewise, the parties agree that Caloumeno did accept and retain the funds in question. However, they dispute whether Caloumeno was entitled to take that money for his campaign or other expenses, since both Local 350 and Region II had disclaimed any liability for the installation dinner and Caloumeno may have been personally liable for any deficit. They also dispute whether George Bishpam, the CSEA Regional Director, advised Local 350 and Caloumeno that Caloumeno was entitled to these funds.

Because the circumstances surrounding Caloumeno's acquisition of property, and the inferences to be drawn therefrom, raise issues of material fact, the defendants' motion for summary judgment on their counterclaims for conversion is denied. *See Katz*, 737 F.2d at 244.

#### b. Fair Hearing Claims

Both Caloumeno and the defendants have moved for summary judgment on the issue of whether the defendants violated section 101(a)(5) of the LMRDA. That section provides that

[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for non-payment of dues by such organization or by any officer thereof unless such member has been ... afforded a full and fair hearing.

29 U.S.C. § 411(a)(5) (1982).

██ Caloumeno alleges that the defendants did not provide him with a full and fair hearing within the meaning of this section. First, he argues that the Board's decision was based on the *ex post facto* application of a prohibition which was not contained in the CSEA Constitution or By-Laws until after the acts of which defendants complain. He also alleges that the charges against him constituted selective and discriminatory prosecution. Both of these complaints are directed to the subject matter of the hearing, rather than the manner in which the hearing was conducted. They therefore do not state a claim for a violation of section 101(a)(5). *See International Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233, 245, 91 S.Ct. 609, 616–17, 28 L.Ed.2d 10 (1971) (section 101(a)(5) "gives courts no warrant to scrutinize the union regulations in order to determine whether particular conduct may be punished").

■ Caloumeno next complains that he was unfairly denied access to the Board's tapes of the disciplinary hearing. Neither the CSEA By-Laws nor the Board's procedural rules require that an official record of the hearings be made. However, both the By-Laws and the procedural rules permit either the Board or the parties before it to make their own tape or transcript. Caloumeno was on notice that the Board's tapes would not be available to him and chose not to make his own tape or transcript. Therefore, his reliance on the Second Circuit's decisions in *Rosario v. Amalgamated Ladies' Garment Cutters Union,* 605 F.2d 1228 (2d Cir.1979) and *Feltington v. Moving Picture Machine Operators,* 605 F.2d 1251 (2d Cir.1979), is misplaced. Those cases held that when a union refuses to make a transcript of the hearing available to a party, it cannot refuse permission for that party to make his own tape or transcript. Since Caloumeno was given permission to make his own tape and chose not to do so, the Board did not violate his LMRDA fair hearing rights by refusing to make their tape available to him.

■ Caloumeno's next fair hearing complaint is that the Board was not an impartial tribunal. He bases this claim on his allegation that Marjorie Karowe, a member of the same firm which advised McGowan and drafted his complaint against Caloumeno, also acted as hearing officer and legal advisor to the Board.

Without question, the right to a full and fair hearing includes the right to an unbiased tribunal. *Berg v. Watson* 417 F.Supp. 806, 811 (1976) and cases cited therein at n. 13. However, the extent of Ms. Karowe's participation in Caloumeno's hearing, and her influence on the Board's impartiality, remain issues of material fact. In the same vein, there is an issue as to whether any sort of "Chinese wall" separated Ms.

Karowe from those in her firm who advised McGowan when he drafted his complaint.

Caloumeno also bases his claim of denial of a full and fair hearing on several contractual arguments. Caloumeno argues that the Board violated its own procedural rules and the CSEA By-Laws because: (1) it held the hearings in Albany rather than in Caloumeno's home district of New York City, (2) it took testimony of a witness unfavorable to Caloumeno without notifying him, and (3) it refused to allow Caloumeno to submit a post-hearing memorandum.[3]

■ An action may not be brought under the LMRDA merely to enforce a union's internal rules or procedures. *Curtis v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators,* 687 F.2d 1024, 1029 (7th Cir. 1982). A plaintiff can prevail under the LMRDA for a union's failure to follow its internal rules only if Caloumeno can show that such failure either severely handicapped the preparation and presentation of his defense, or seriously increased the danger of an erroneous determination. *Id.* at 1030.

■ With this in mind, we address the first alleged contractual violation, the Board's insistence on holding the hearings in Albany. First of all, there is a factual issue whether holding the hearing in Albany in fact violated any internal union rule.[4] Moreover, there is a factual issue as to whether Caloumeno in fact could or could not afford to litigate in Albany, or whether he refused to do so for other reasons. Thus there is an issue whether Caloumeno was prejudiced, if at all, by the Board's action or his own choice.

■ We now turn to the second alleged contractual violation, which concerns the

---

3. Caloumeno also argues that he was denied a fair hearing because the Board refused to approve a settlement offered by both parties. This point is frivolous and does not merit discussion.

4. Caloumeno argues that the Judicial Board Procedures gave him the right as President of Region II to demand that his hearing be held in New York City. These Procedures provide that absent special circumstances, hearings "will" be held at the CSEA headquarters in Albany "or in Region offices." It is not clear, however, to whose discretion is left the decision as to the actual location of a given hearing, whether Albany or a Region office. Nor is it clear on what factors such a decision should rest.

additional witness. Both the CSEA By-Laws and the Board's procedural rules provide that when a party fails to appear at a scheduled hearing, the Board may hold the hearing without participation by the absent party. Notwithstanding these provisions, Caloumeno complains that he should have received notice that the Board would hear from an additional witness. We need not reach the issue of whether this action was in violation of any internal union rules, because in any event, it could not have prejudiced Caloumeno's right to a fair hearing. According to Caloumeno himself, the reason he ceased to litigate the matter was that he could no longer afford to do so. Thus we may assume that even were he notified of the additional witness, he would not have confronted him. Given this circumstance, we cannot say that the lack of notice was prejudicial.

■ As to the post-hearing brief, it is not disputed that the Board's procedures give a defending party the right to submit a post-hearing brief. However, there is an issue of fact whether the Board's denial of that right to Caloumeno either severely handicapped his defense or seriously increased the danger of an erroneous determination by the Board.[5] *See Curtis, supra,* 687 F.2d at 1030. Therefore, there is an issue of fact whether the Board's refusal to accept Caloumeno's post-hearing brief denied him a full and fair hearing.

Because there are issues of fact going to Caloumeno's fair hearing claims, the parties' motions for summary judgment on the first cause of action are denied.

### c. Breach of Contract Claims

■ The complaint's seventh cause of action is for breach of contract. Caloumeno considers the CSEA constitution and by-laws to be a contract.

As we indicated above and in our memorandum decision of July 15, 1985,

"[t]he provisions of the LMRDA were not intended by Congress to constitute an invitation to the courts to intervene at

will in the internal affairs of unions." *Gurton v. Arons,* 339 F.2d 371, 375 (2d Cir.1964). The union itself is the proper forum to resolve this [contractual] dispute. Indeed, an important function of any union Judicial Board is to enforce the provisions of the union's constitution and bylaws; this function would be emasculated were we to permit the [assertion of this claim].

*Caloumeno,* No. 83 Civ. 4932, slip op. at 15 (S.D.N.Y. Jul. 15, 1985). Therefore Caloumeno's breach of contract claims do not, *per se,* state a claim under the LMRDA.

However, Caloumeno asserts that his breach of contract claim is not one brought under the LMRDA, but rather is an ancillary state claim, over which we have pendent jurisdiction.

In light of the questions discussed above concerning Caloumeno's allegations of breach, this rather questionable claim is not ripe for decision.

### d. LMRDA Free Speech Claims

■ Section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2) (1982), guarantees members freedom of speech and assembly in union affairs. This guarantee creates a tension with other statutes and policies. *See, e.g., Schonfeld v. Penza,* 477 F.2d 899, 903–904 (2d Cir.1973) (Title IV's requirement of initial appeal to the Secretary of Labor); *Newman v. Local 1101, Communications Workers of America, A.F.L.–C.I.O.,* 570 F.2d 439 (2d Cir.1978) (longstanding policy against intervention in the internal affairs of unions). In order to accommodate the competing objectives underlying these various constraints, the courts will intervene under section 101(a)(2) only "where union action ... can be fairly said, as a result of established union history or articulated policy, to be part of a purposeful and deliberate attempt by union officials to suppress dissent within the union." *Schonfeld,* 477 F.2d 809, 904 (2d Cir.1973); *see also Newman,* 570 F.2d at 445–446.

This standard is not met by the "mere appendage of free speech allegations to an

---

**5.** Neither party's submissions include a copy of the brief in question. We are therefore not in a position to comment on whether it was of any consequence.

election complaint," *Schonfeld*, 477 F.2d at 903, but rather requires clear and convincing proof. *Newman*, 570 F.2d at 445–446.

The question of whether the union's actions in question were taken for the purpose of stifling dissent or simply to discipline perceived thievery, raises issues of motivation and intent. Such "state of mind" issues are ordinarily inappropriate subjects for summary judgment treatment. 10A Wright, Miller & Kane, Federal Practice and Procedure: § 2730 (1983).

Moreover, there is an issue of fact whether the union's disciplining of Caloumeno was an isolated retaliatory action, or part of a wider anti-democratic scheme. For this reason also, summary judgment on Caloumeno's LMRDA free speech claims is inappropriate. *Cotter v. Owens*, 753 F.2d 223 (2d Cir.1985).

e. LMRDA Equal Rights Claims

█ The viability of Caloumeno's LMRDA equal rights claims depends on that of his LMRDA free speech and fair hearing claims. Because we have denied summary judgment on the latter claims, we must perforce deny summary judgment on the equal rights claims.

CONCLUSION

For the reasons discussed above, the remaining claims in this action are those numbered 1, 2, 3, 4, 5, 7, 11, and 17. As to these claims, the parties' several motions for summary judgment are denied.

In closing, we wish to remark that this Court has been attempting to bring this case on for trial for several years. However, counsel for both parties have preferred to conduct extensive motion practice. This must cease. The parties must be ready for trial within thirty days of the date of this decision.

SO ORDERED.