Guy D. MEEK, Renata Pagliaro, John Davis, George Bradley III, and Pamela Keyes, Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA (AIRLINE DIVISION), Defendant.

No. 87 CV 4219.

United States District Court, E.D. New York.

Feb. 16, 1988.

Barbara Harvey, Detroit, Mich., and Clinton & Schwartz, New York City (Louie Nikolaidis, of counsel), for plaintiffs.

Gary S. Witleu and James A. McCall, Washington, D.C., and Herbert K. Lippman, New York City, for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

In this action under the Labor–Management Reporting and Disclosure Act of 1959, as amended ("LMRDA"), 29 U.S.C. §§ 401–531, plaintiffs have moved for a preliminary injunction. The Court has conducted a hearing and makes the following findings of fact and conclusions of law. Fed.R.Civ.P. 52(a). For the reasons developed below, plaintiffs' motion is granted in part.

## I. FACTS

This case has its genesis in the merger of Republic Airlines ("Republic") into Northwest Airlines ("Northwest"), which took place in August 1986. Prior to the merger, Republic's flight attendants were represented by the Association of Flight Attendants ("AFA") and worked pursuant to a collective bargaining agreement known as the Navy Book. Northwest's flight attendants were represented by the defendant, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Airline Division) ("IBT"), and worked pursuant to a collective bargaining agreement known as the Blue Book.

Following the merger, Northwest recognized the IBT as the exclusive bargaining representative for all flight attendants, and the IBT administered a transition agreement that provided that the former Republic flight attendants (hereinafter "Navy attendants") would continue to work under the Navy Book's provisions. An election was held on November 10, 1986 to determine which union would represent all flight attendants at Northwest. During the campaign, the IBT promised the Navy attendants that they would not be required to pay an initiation fee to the IBT, that they would not be required to pay union dues until an integrated agreement covering both unions had been negotiated, and that Navy attendants would be represented on a negotiating committee that would be empowered to negotiate and approve any proposed agreement prior to its submission to the workforce for ratification. The IBT won the election, and was certified as the exclusive bargaining representative of all flight attendants.

The Negotiating Committee consists of fourteen members. Its purpose is to ensure that both Blue and Navy attendants have input into the integrated agreement. Elections for the Committee were held in January 1987. Fourteen members—eight Blue and six Navy—were elected. Plaintiffs Renata Pagliaro, George Bradley, Guy Meek and John Davis, and two others, were elected as the Navy members of the Committee. Pagliaro and Bradley are based in Detroit, Meek and Davis in Minneapolis.

In late February 1987 the Committee unanimously rejected a tentative agreement reached between Northwest and representatives of IBT. In April 1987 the IBT declared an impasse in negotiations and requested mediation services of the National Mediation Board.

In January 1987 the IBT had sent membership applications and dues checkoff cards to Navy attendants and requested their immediate return as "the way to put yourself in good standing with our organization, and provide your input into the union's decision making process." Many Navy attendants completed and returned the applications and cards.

On April 1, 1987, IBT Airline Division Director William Genoese, Sr. demanded that all Navy attendants immediately sign dues deduction cards. He stated that dues deduction would begin in May 1987, and that failure to timely comply would result in the requirement of an initiation fee to become an active member with voting rights. More than 2300 Navy attendants, including the plaintiffs, timely submitted membership applications and dues checkoff authorizations. Northwest, however, refused to deduct and remit such dues to the IBT. The IBT filed suit in this Court to compel Northwest to deduct and remit dues. On August 7, 1987, following a hearing, this Court dismissed the IBT's Complaint. *IBT v. Northwest Airlines*, 87 CV 1625. Three weeks later, IBT demanded from Navy attendants retroactive payment of dues for May through August, 1987, and stated that all who failed to respond would not be permitted to vote, or to hold an office or committee position. On October 13, 1987, the Negotiating Committee met. Claudia Bushbaum, secretary-treasurer of IBT Local 2747, removed Meek and Davis from the Committee on the ground that they were urging Navy members not to pay dues until an integrated contract was in place. Pagliaro and Bradley were removed for refusing to sign a letter that urged Navy attendants to pay dues. Pagliaro and Bradley were subsequently reinstated to the Committee, but the IBT has refused to reinstate Meek and Davis. Bruce Hentz, another Navy Committee member, has failed to attend a Committee meeting since October. The sixth Navy member, Suzanne Balzer, resigned from the Committee on January 1, 1988. She has been replaced by Greg Riffle, who consistently favors the Blue position over the Navy position on divisive issues. As of today, the Committee consists of eight Blue members and three Navy members, one of whom will vote in favor of the Blue position. By January 1988, Meek, Pagliaro, Davis, and Bradley had paid dues retroactive to October 1987.

The Complaint in this case was filed on December 16, 1987. Counts I and II assert that defendant's removal of Meek, Davis, Pagliaro, and Bradley deprived plaintiffs and other Navy attendants of the free speech and voting rights secured by the LMRDA. Count III alleges that the IBT's unilateral imposition of an initiation fee and dues obligation violates the LMRDA's guarantee of a right to secret ballot for dues increases. Count IV alleges that the imposition of dues on Navy attendants constitutes breach of contract. The Complaint demands declaratory and injunctive relief.

Plaintiffs have moved for a preliminary injunction to enjoin defendant (1) from refusing to permit elected Committee members from participating in the Committee's meetings and business; (2) from appointing replacements for unlawfully removed members; (3) to replace Ms. Balzer with the candidate who received the second-highest number of votes for the position to which Balzer was elected; (4) from refusing to submit to membership for ratification any agreement not approved by a lawfully constituted Negotiating Committee; and (5) from withholding or threatening to withold the right to vote from Navy members who refused to pay initiation fees or union dues.

Prior to the hearing on this motion, the Court issued a temporary restraining order barring the Negotiating Committee from voting to approve and submit to members for ratification any proposed collective bargaining agreement. Upon consent of the parties the temporary restraining order was extended until today.

## II. CONCLUSIONS OF LAW

■ In order to obtain a preliminary injunction, the movants must establish 1) irreparable harm and 2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to

make them a fair ground for litigation and a balance of hardships tipping decidedly in the movants' favor. *Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 15 (2d Cir.1987).

There is no indication that defendant is presently refusing to permit either Pagliaro or Bradley from participating fully in the Committee's affairs. In addition, the plaintiffs failed to present sufficient evidence that the replacement of Balzer by Riffle violated provisions of the LMRDA. Finally, I am not persuaded at the present time that the voting rights of Navy attendants are in danger of being abrogated by the IBT. Thus, the foci of the motion are Meek and Davis.

### A. *Sufficiently Serious Questions*

Defendant argues that the Complaint must fail for two reasons: (1) plaintiffs are not union members within the meaning of the LMRDA, and (2) even if they are members, they have failed to show that defendants deprived them of rights secured by the LMRDA.

#### 1. Union Membership

Section 3(*o*) of the LMRDA provides:

> "Member" or "member in good standing", when used in reference to a labor organization, includes any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization.

29 U.S.C. § 402(*o*). Defendant argues that plaintiffs did not automatically become IBT members after certification of the IBT. The international union requires payment of dues on a current monthly basis in order to be a member in good standing, while Local 2747, which is the local for Minneapolis-based employees (including Meek and Davis), requires payment of dues, acceptance of an application, and administration of an oath of membership. Defendant asserts that none of the plaintiffs had met these requirements as of October 13, 1987

and, hence, were not union members on the date of the alleged violations. Based on the record before me, I cannot agree.

First, the four Committee-member plaintiffs submitted membership applications in April 1987. Second, they have paid dues retroactive to October 1987, a fact reflected in the IBT's records. Third, there was no evidence presented that the IBT has required any Navy attendants other than Meek or Davis to take a membership oath.

■ The evidence, taken as a whole, is that the IBT treated the plaintiffs as union members until October 1987, and that the plaintiffs completed all of the membership requirements demanded by the IBT. Therefore, while they may not have been formally listed by defendant as "members" as of October 13, 1987, they were members in substance, and are protected by the LMRDA. *See Alvey v. General Electric Co.*, 622 F.2d 1279, 1284 (7th Cir.1980).

#### 2. Stating a Claim

Section 101(a)(2) of LMRDA provides, in relevant part:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance or its legal or contractual obligations.

29 U.S.C. § 411(a)(2) (emphasis in original). A court analyzing a claim under § 101(a)(2) must first determine whether the challenged conduct interferes with an interest protected by the section. If it does, the

court must decide whether the conduct is reasonable and thus sheltered by the section's proviso. *United Steelworkers of America v. Sadlowski,* 457 U.S. 102, 111, 102 S.Ct. 2339, 2345, 72 L.Ed.2d 707 (1982).

Plaintiffs assert that their removal from the Committee violated their free speech rights. The IBT responds that the plaintiffs enjoyed these rights solely as rank-and-file members, and that § 101(a)(2) did not protect them in their capacities as committee members. The IBT argues in the alternative that even if plaintiffs were protected by this section, the IBT acted rationally in removing them because their position on collection of union dues represented a serious threat to union solidarity at a time when the union was negotiating a collective bargaining agreement with management.

In *Finnegan v. Leu,* 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982), the Supreme Court held that § 101(a) did not protect a union member in his capacity as an appointed staff member who was removed from the staff by newly-elected union leadership. *See id.* at 440–43, 102 S.Ct. at 1872–74. The Court noted, but did not discuss, the Second Circuit's position that § 101 limits a union's authority to dismiss officers as " 'part of a purposeful and deliberate attempt ... to suppress dissent within the union.' " *Id.* at 441, 102 S.Ct. at 1873 (ellipses in original) (quoting *Schonfeld v. Penza,* 477 F.2d 899, 904 (2d Cir. 1973)). After *Finnegan* the Second Circuit stated that the LMRDA might permit reinstatement of union policymakers where there was " 'clear and convincing proof' " that such policymakers were fired as part of a series of oppressive acts by union leadership that threatened union members' freedom of speech. *Cotter v. Owens,* 753 F.2d 223, 229 (2d Cir.1985) (quoting *Newman v. Local 1101,* 570 F.2d 439, 445 (2d Cir.1978)).

On the record before me, I conclude that plaintiff has presented sufficient evidence to pose a serious question whether defendant's conduct ran afoul of § 101(a)(2). First, the IBT has been attempting vigorously since April to collect union dues, in contravention of promises that it made during the certification election. Navy attendants have been threatened with, among other things, loss of membership privileges if they refused to acquiesce to the IBT's demands. Second, the plaintiffs were removed from their position because of their stance on the dues issue.

The plaintiffs, all Navy attendants, were elected by mostly Navy attendants, and it is the Navy attendants, not the Blue attendants, from whom the IBT has attempted to extract dues. It is difficult to conceive of anything more threatening to the free speech rights of the Navy attendants than to remove four of their duly elected representatives for positions that they have taken on the dues collection issue. Thus, while the dispute in this case is of recent origin, the Court concludes for purposes of this motion that a sufficiently serious question concerning § 101(a)(2) has been presented.

The Court must now determine whether the defendant's actions were reasonable. Defendant correctly observes that a union is sheltered from liability under § 101 if its conduct is rationally related to a legitimate union interest. *See Sadlowski, supra,* 457 U.S. at 112, 102 S.Ct. at 2346. Here, however, defendant has failed to persuade me that its actions were rationally related to the goal of union solidarity. First, the evidence does not suggest that the four Committee-member plaintiffs disrupted any of the Committee's business. The sole confrontation between them and the rest of the Committee was precipitated by IBT officials, not plaintiffs. Second, there was insufficient evidence to suggest that plaintiffs' stance on the dues question either galvanized Navy attendants into refusing to pay dues or caused management to perceive the IBT as a divided organization.

### B. *Balance of Hardships*

The Court has little difficulty concluding that the balance of hardships in this case tips decidedly in plaintiffs' favor. If an injunction is not issued, plaintiffs probably will be unable to obtain meaningful ultimate relief. The primary hardship to de-

fendant should an injunction issue is that it would be unable to submit a contract for ratification to membership unless it complies with the injunction's conditions. Defendant, however, can immediately re-admit Davis and Meek to the Committee. Given the Committee's present nine-to-two Blue voting majority, it is obvious that the re-admission of the two Navy attendants would not impede approval or denial of a contract should the Blue members vote as a bloc, as they apparently have done on every important issue since the Committee was formed. If the defendant chooses not to re-admit Meek and Davis, it does suffer a hardship: it cannot procure approval of a collective bargaining agreement. If, however, it does choose to re-admit them (an act that it admits will have no impact on the Committee's vote) it can submit an agreement for ratification. Meek and Davis, on the other hand, cannot be afforded redress for the serious violations that they allege unless an injunction issues. Balancing the competing hardships, I conclude that they tip decidedly in the plaintiffs' favor.

## C. *Irreparable Harm*

Defendant's final argument is that plaintiffs have failed to show irreparable harm because the absence of Meek and Davis does nothing more than weaken the Navy group's minority status on the Negotiating Committee. This is true, but irrelevant. The issue presented by this case is whether the defendant can remove lawfully elected officials from a committee whose purpose is to pass on proposed collective bargaining agreements. Should the Court find such removal illegal, it will order final relief. But if a collective bargaining agreement has been approved and ratified prior to that time, fashioning meaningful relief will be difficult, if not impossible. Preservation of the status quo, therefore, is essential at this time.

## III. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that plaintiffs' motion for a preliminary injunction is granted to the fol-

lowing extent: The International Brotherhood of Teamsters, Chaffeurs, Warehousemen and Helpers of America (Airline Division) is enjoined from submitting to the flight attendants employed by Northwest Airlines for ratification any tentative bargaining agreement approved by the Negotiating Committee, unless and until both Guy D. Meek and John Davis are given timely notice of the Committee's meetings, and are permitted to attend at such meetings, and participate and vote as members of the Committee on such tentative agreement. In all other respects, plaintiffs' motion is denied.

SO ORDERED.