**Linda NIXON, Plaintiff,**

v.

**UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, LOCAL NO. 7 and Charles E. Mercer, Defendants.**

**Civ. A. No. 89–B–1411.**

United States District Court,
D. Colorado.

Dec. 7, 1990.

Barry D. Roseman, Denver, Colo., for plaintiff.

Bruce W. Sattler, Faegre & Benson, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

United Food and Commercial Workers International Union, Local No. 7 (Union) and Charles E. Mercer (Mercer) move for summary judgment on Linda Nixon's (Nixon) second claim for relief. In that claim, Nixon alleges that she was discharged from her employment as a Union organizer by Mercer, president of the Union, in retaliation for her campaigning in favor of Mercer's primary political opponent. Nixon alleges that her discharge violated section 101(a) of the Labor–Management Reporting and Disclosure Act (LMRDA). 29 U.S.C. § 411(a). I conclude that the rule in *Finnegan v. Leu*, 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982), applies to Nixon's second claim. However, a material question of fact exists whether her discharge was part of a purposeful and deliberate attempt to suppress dissent within the Union so as to place her case within an exception to the *Finnegan* rule. Accordingly, I deny the motion.

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment is appropriate against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The nonmovant must offer evidence to dispute the facts demonstrated by the evidence of the movant. *R–G Denver, Ltd. v. First City Holdings of Colorado*, 789 F.2d 1469, 1471 (10th Cir.1986). The nonmovant cannot rely on conclusory allegations in an affidavit. *Lujan v. National Wildlife Fed'n,* —— U.S. ——, ——, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695, 716 (1990). Furthermore, "the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the time of trial on the merits." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

The parties agree on the following facts. In November, 1987, Nixon was hired to work as an organizer for the Union on a permanent, full-time basis. Part of her job was to attempt to persuade employees to unionize and designate the Union as their bargaining agent. Since 1980, Mercer has been the elected president of Local 7, and is responsible for hiring all Local 7 employees, including Nixon.

Nixon was an outspoken critic of Mercer, publicly opposing his stance on Union policy issues. She also actively campaigned for Ron Bush (Bush), one of Mercer's primary opponents in the Union presidential election. After the general election, Mercer trailed Bush 2279 to 2338. A third candidate received 817 votes. There being no majority, a run-off election was held. Mercer won, receiving 3614 votes to Bush's 3255 votes. Shortly after the run-off election, Mercer discharged Nixon from her employment with the Union, stating as his reason, Nixon's dissension from Mercer's policies. Nixon then filed an unfair labor practice charge with the National Labor Relations Board. The Board denied her appeal and Nixon filed this action.

Nixon contends that her discharge violated section 101(a), the free speech provision of Title I of the LMRDA. 29 U.S.C. § 411(a). The Union and Mercer move for summary judgment contending that section 101(a) does not provide a claim under these facts, relying on *Finnegan v. Leu*, 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982). There, several members of a local union who held nonelected staff positions as business agents were dis-

charged by the local's newly elected president. The business agents had been appointed by the incumbent president and had openly supported his unsuccessful re-election campaign.

The Supreme Court rejected the business agents' section 101(a) claims, holding that the basic objective of the LMRDA, democratic union government responsive to the will of the membership as expressed by periodic elections, is served by permitting union leadership to choose staff whose views are compatible with its own. *Finnegan*, 456 U.S. at 441, 102 S.Ct. at 1873. As the Tenth Circuit held, quoting Colorado District Court Judge Weinshienk, "Title I ... is intended to protect the individual rights of union members. It was not, however, intended to protect the positions of union officers or employees [citations omitted]. Plaintiff may recover under § 411(a)(5) only to the extent that his membership rights were affected by the union disciplinary proceeding." *Gesink v. Grand Lodge*, 831 F.2d 214, 217 (10th Cir.1987); *see Finnegan*, 456 U.S. at 442, 102 S.Ct. at 1873.

Nixon contends that *Finnegan* is limited to situations where the discharge of union employees comes on the heels of a new union president taking office, not where, as here, an incumbent union president is re-elected. Nixon also contends that even if *Finnegan* does apply, her claim falls outside the scope of its rule because (1) as an organizer, she was not a "policymaking" union employee and (2) her discharge was part of a purposeful and deliberate attempt by Mercer to suppress dissent within the Union.

Under *Finnegan*, it is irrelevant that an *incumbent* union president was re-elected. Rather, the overriding objective of the LMRDA is democratic governance. *Finnegan*, 456 U.S. at 441, 102 S.Ct. at 1873. Permitting an elected union president to pick a staff whose views are consistent with his or her own is consistent with this objective. *See Sheet Metal Worker's Int'l Ass'n v. Lynn*, 488 U.S. 347, 354–55, 109 S.Ct. 639, 644–45, 102 L.Ed.2d 700 (1989).

However, Nixon argues that this rationale is inapplicable when an incumbent union president is re-elected, because the re-election shows support for not only the president, but those appointed to work in the incumbent's administration as well. Consequently, Nixon contends, the re-election "represented a mandate to retain things as they were, not to make changes in [Mercer's] staff or policies." Response at 8.

It is speculative to conclude that an incumbent's re-election necessarily evidences support for the status quo. Whatever the election's "message" may be, to give the process democratic meaning, any president must be able to select his or her own staff. *Finnegan* is clear that the goal of fostering union democracy is served best by this rule, regardless of whether the president has served successive terms of office. The Supreme Court stated that section 101(a) of the LMRDA

> does not restrict the freedom of an elected union leader to choose a staff whose views are compatible with his own. Indeed, neither the language nor the legislative history of the [LMRDA] suggest that it was intended even to address the issue of union patronage. To the contrary, the [LMRDA's] overriding objective was to ensure that unions would be democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections. [Citations omitted]. Far from being inconsistent with this purpose, the ability of an elected union president to select his own administrators is an integral part of ensuring a union administration's responsiveness to the mandate of the union election.

*Finnegan*, 456 U.S. at 441, 102 S.Ct. at 1873 (footnotes omitted); *see Tucker v. Bieber*, 900 F.2d 973, 978–79 (6th Cir.) (upholding incumbent president's discharge of appointed staff member for announcing candidacy in next election), *cert. denied,* — U.S. ——, 111 S.Ct. 135, 112 L.Ed.2d 102 (1990); *Witmeyer v. Brotherhood of Ry. Airline & S.S. Clerks*, 779 F.2d 206, 207–08 (4th Cir.1985) (upholding incumbent president's discharge of organizer for op-

posing policies and re-election campaign). Patronage-related discharges may have some chilling effect on free speech. The Supreme Court, however, has determined that where the discharged employee was not an elected official, this concern is outweighed by the need to vindicate the democratic choice made by the union electorate. *See Lynn*, 488 U.S. at 354–55, 109 S.Ct. at 644–45.

■ Nixon next contends that if *Finnegan* applies to discharges by re-elected incumbents, her case falls within an exception to *Finnegan* because she was not a policymaking employee and her discharge was part of an attempt to suppress dissent within the Union. The Supreme Court left open the issue whether a nonpolicymaking and nonconfidential employee discharged for political reasons has a claim under LMRDA section 101(a). *Finnegan*, 456 U.S. at 441 n. 12, 102 S.Ct. at 1873 n. 12.

It is doubtful that there is truly a "nonpolicymaker" exception. *See Cotter v. Owens*, 753 F.2d 223, 227–28 (2d Cir.1985) (assuming without deciding exception exists). The Second Circuit has stated that such an exception, absent a showing that Union membership rights had been infringed by the discharge, would transform section 101(a) "into a genie offering lifetime job security because Title I rights would be backed by a right to bring an action for any loss of union employment." *Franza v. International Brotherhood of Teamsters, Local 671*, 869 F.2d 41, 47 (2d Cir.1989). I agree, and conclude that the mere fact that a discharged union employee held a nonpolicymaking position does not exclude him or her from the rule of *Finnegan*.

Furthermore, even if there were such an exception, it would not apply to Nixon. As an organizer, she had represented the Union in its expansion efforts before potential members. In *Witmeyer*, the Fourth Circuit faced a similar argument presented by a discharged organizer. "Witmeyer's duties as an organizer necessarily provided him with the opportunity to make union policy. In meeting with prospective union members and their employers, Witmeyer

was, in effect, the union." *Witmeyer*, 779 F.2d at 208.

Although Nixon asserts in her response that I need more information before determining whether she held a policymaking position, she fails to provide any evidence that there is a material question of fact on this issue. Indeed, her affidavit supports the conclusion that she was responsible for implementing Union policy through organizing new bargaining units. Consequently, assuming that her job description is relevant to application of *Finnegan*, Nixon has failed to meet her summary judgment burden.

■ The Supreme Court also left open the question whether an appointed staff member, discharged for political reasons, would have a claim under LMRDA section 101(a) where the discharge was "part of a 'purposeful and deliberate attempt ... to suppress dissent within the union.'" *Finnegan*, 456 U.S. at 441, 102 S.Ct. at 1873 (quoting *Schonfeld v. Penza*, 477 F.2d 899, 904 (2d Cir.1973)). Nixon argues that her discharge was part of such an attempt and that she is therefore exempt from the *Finnegan* rule.

I conclude that such an exception exists because it is in harmony with the LMRDA's democratic purpose. However, because any discharge by a president of an appointed staff member carries with it, by its very nature, some suppression of dissent, this exception risks eviscerating *Finnegan* altogether. Consequently, it is a very narrow exception, applied only in unusual circumstances, *see Cotter*, 753 F.2d at 229; *Dessler v. Teamsters*, 686 F.Supp. 977, 980–81 (D.R.I.1988), and requiring proof by clear and convincing evidence, *Franza*, 869 F.2d at 48–49.

Nixon contends that the history of attempts by the Union, its agents and Mercer to stifle disagreement with Mercer's policies constitutes a pattern of conduct sufficient to justify departure from the *Finnegan* rule. In determining whether the affidavits provided by Nixon are sufficient to establish the existence of a question of fact on this issue, I must apply the clear and convincing standard. *Applied Genetics*

*Int'l, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1243 (10th Cir.1990).

Nixon provides affidavits of Ron Bush and Joseph Drexler, two opponents of Mercer's presidential effort, stating that Mercer refused to provide severance pay to them unless they retired from employment with the Union and signed agreements stating that they would never again become involved in Local 7 affairs. In addition, Nixon provides affidavits from various Union members recounting acts and threats of retaliatory discharge, acts and threats of physical force, and censorship of remarks by Mercer supporters during Union events. For example, in an affidavit by Patricia Annibal, a member of the Union, she relates an incident during a Union membership meeting in which Mercer supporters allegedly prevented Annibal from speaking by shutting-off her microphone and escorting her from the meeting.

Alone these alleged episodes may not constitute a showing that Nixon's discharge was part of a larger purposeful and deliberate attempt to suppress dissent within the Union. Together, however, a reasonable jury, applying the "clear and convincing evidence" standard, could conclude that Nixon's discharge was part of the Union's history or articulated policy of controlling disagreement, and more than miscellaneous random acts. *Johnson v. Kay*, 860 F.2d 529, 537 (2d Cir.1988); *Schonfeld v. Penza*, 477 F.2d 899, 904 (2d Cir.1973); *Local 1199, Drug, Hospital and Health Care Employees Union v. Retail, Wholesale and Department Store Union*, 671 F.Supp. 279, 287 (S.D.N.Y.1987). For purposes of summary judgment, Nixon has established a genuine question of material fact on this issue. *See Caloumeno v. McGowan*, 668 F.Supp. 322, 327–28 (S.D.N.Y.1987); *see also Meek v. International Bhd. of Teamsters*, 681 F.Supp. 1014, 1018 (E.D.N.Y.1988).

In conclusion, I hold that: (1) the *Finnegan* rule applies to a re-elected Union president; (2) the fact that a discharged union employee held a nonpolicymaking position does not exclude that employee from the rule of *Finnegan*; (3) a LMRDA Section 101(a) claim exists where a discharge was part of a purposeful and deliberate attempt to suppress dissent within the Union; (4) the "attempt-to-suppress-dissent" exception to the *Finnegan* rule must be established by clear and convincing evidence; and (5) a genuine issue of material fact exists whether Nixon's discharge here was part of a purposeful and deliberate attempt to suppress dissent within the Union.

Accordingly, it is ORDERED that United Food and Commercial Workers International Union, Local No. 7 and Charles E. Mercer's motion for partial summary judgment is DENIED.